Systems, et al., 2015, 17, 67, and 68. Mr. Borsan. Thank you. May it please the Court. The lower court's ruling is wrong because the court misunderstood and misapplied what happened in the E-Speed case, which involved the ruling of this court. In E-Speed, this court affirmed a narrow construction of static. It said static means price levels do not move unless they're moved manually. The result for literal infringement, an accused product has to provide a mode in which the price levels can only be moved manually. In other words, the price levels need to be locked and they can't be moved automatically. Such a mode provides what this court found to be the benefit of the term static, a guarantee that the user will get their price if they clicked at the right level. We call it the price guarantee. The construction was narrow because it could be avoided, literally, by introducing into a mode some risk of automatic movement, even if that risk is somewhat low. Now, in the E-Speed appeal, TT tried to broaden that construction. That's what we argued. TT wanted the construction to include modes in which automatic movement was possible as long as the price has ever stayed still with hindsight, basically, when the market changed. This court affirmed, rejected TT's arguments, and we're stuck, TT, with that narrow construction, and that's what we're applying here. Now, in E-Speed, the non-infringing products had no mode whatsoever where the prices were locked and could be subject to automatic movement. The user was always at risk of potentially missing their price. There was no guarantee, and that was the key for why it wasn't infringing. On the other hand, there was another product called Futures View that had automatic movement, but no mode. It also had a mode where there was no automatic movement, and there was a guarantee in that mode, and that was the key why that infringed. How that mode was entered and exited, which in that case was from a user setting, was not relevant. Now, the accused products here have a static mode, and they're not like the non-infringing product in E-Speed. They provide predetermined, by design, predetermined fixed time periods in which the software prevents any alleged automatic movement from occurring. In these periods, the software locks the price levels so they can only be moved manually. Automatic movement is forbidden in those time periods. The prices are permanently kept still in those time periods unless the user chooses to move it. The length of the time periods is adjustable by a user, either in a menu setting or in an editable file, anywhere from 15 minutes to as long as, depending on the version, 68 years. And the appellees admit that their logic applies equally regardless of how that's set. With the 68 years, I take it you'd have to get into the software and alter the config. It's in our brief that in early versions, actually, you could enter something in a FuturePath product that would let it go 68 years right in a menu setting. In later versions, the more recent version, you'd have to edit a file. It's a text file that could be easily edited and enter in a number of seconds. It may be easily edited by you, but probably not by me. Right, but it can be done. There are lots of instances in which you can modify a particular product in a way that would make it infringing, but that doesn't mean that the person that sells the product is infringing, right? Well, in this case— High-tech instrumentation, I guess, is the first case that discusses that, but there have been a lot. Well, in this case, though, the products—we're talking about this fixed time period, whether the user sets it, which could be done in a menu setting in some versions to off into the years, or whether the user config file. No matter what, all versions of the product provide these, by design, fixed time periods in which the price levels are locked. The most recent products have it as a 15-minute period in the user setting. But your position would be the same even if it had a five-second period, I guess. Yes, if you're locking it—the position, as we explained it, as explained by Mr. Klausner, TT's expert, and he was unrebutted on this, is that there's a separate mode or operational state if that could be perceived by the user. And he explained that their product always provides a mode that can be perceived by the user. In fact, we're not making this up. This was by design. This is explained—first of all, they have user menu setting windows in their software that let you set this time period. We show examples of those on page 5 of our reply brief. It's described in their user manuals and their release notes, this functionality, the very purpose of which is to give the trader the guarantee. So this is not—we're not artificially drawing lines here around the product. It's exactly why they designed it, to lock it this way. Now, of course, a user could set it down as low as five seconds, but the evidence showed most users make it the maximum possible that's available to them. And in some versions, by the way, in the menu setting, you could go as long as into the years in the menu setting, not just in the config file. Now, the lower court thought that what—they misapplied what happened in the ESP case. They thought the reasons for non-infringement there—the court thought the reasons for non-infringement there apply here. And the court focused on the fact that in the infringing product in ESP, the static mode was entered and exited by a user setting. But this is a red herring. Now, interestingly, the court acknowledged at A16, quote, the fact that the price access is static for a definable period of time. That was acknowledged by the court. This should have precluded some re-judgment of non-infringement. But the court went on to require more. The court requires that an accused product must, quote, operate solely in an infringing mode, and that's at A16, end quote. There needs to be a, quote, setting that the user can elect to go from one mode to another. That's at A19. That's the problem. There's no basis for what I will call this extra user switch requirement. It's not in the construction, and it's not in the law. Now, another thing that reveals the court's misunderstanding is at several places in the opinion, the lower court said it believed taken to its logical extreme, TT's position would cover the non-infringing ESP dual dynamic product. It says that twice, in A17 and A18. Appellees repeat that argument at page 32 of their brief. They say the same thing. That is wrong. TT's position does not result in the ESP product infringing because that product has no mode ever where it locks the prices and there's no possibility of automatic movement. So that kind of reveals where I think some of the misunderstanding happened. Now, importantly, the appellees do not dispute the distinctions between the ESP product that we show on pages 12 and 14 of our brief. We have these diagrams that show the ESP non-infringing product, you are always at risk. The current products have these time periods where it's locked and there's no risk. So what do they argue now? They argue that the issue of time-based recentering was already decided in the previous case. They're making, in effect, a collateral estoppel argument without calling it that. They actually say that Judge Moran, quote, explicitly addressed and, quote, determined that products with time-based recentering were not static. That's at page 8 of the brief. They say this court, quote, unequivocally ruled, end quote, that these types of products are not static. That's at page 28 of the brief. That's just not true. In the ESP case, there is no infringement ruling ever with respect to a product with time-based recentering because there was no product that functioned that way before the court. But the language used by the court in the Trading Technologies 595F third case was pretty broad, it seems to me, that language such as, in the first place, the recentering command must indeed occur as a result of a manual entry. Taking that language by its terms, that would foreclose your argument, would it not? No. The construction that was affirmed by this court and everything it talked about was – Just take that language. Yeah. That language is inconsistent with your theory of this case, is it not? No. Their product has a mode – No, no, not has a mode. You're going back to the – their product has automatic recentering. It may not occur very often and it may occur very predictably, but if we interpret this sentence, as it seems to me it's best interpreted to mean recentering must indeed occur as a result of a manual entry in order to infringe, that doesn't apply to the accused products. I don't agree with that. I'd like to explain why. First of all, in that case, in the ESB case, the product that was found to infringe also had automatic movement. Futures View had automatic movement. It had a mode where it could not occur. So the – what this court was addressing in ESB in that part of the opinion was what's the construction? The construction it affirmed is price levels do not move unless they move manually. But talking about ESB, I understood that you could switch it to automatic, you could switch it to manual. That's not the case here, as I understand it. The software, by design – it's done by the software as opposed to a user setting, but by design, the software for these definable periods locks the price axis. But you're running to the definable periods argument. You are not, I think, accepting the notion that this sentence seems to say that it has to be manual in order to infringe. Why is that sentence – When I read this, the construction said only manual. To infringe, you need a mode that meets that construction. And if you have a mode where you lock the prices and do not permit any automatic movement, you only permit manual, which is what their product does, that meets that construction. Even if it's only for five seconds? Five seconds. Unrebutted, Mr. Clauser explained that things in the realm of five seconds are perceivable. And we know from FuturePath's own – FuturePath, for example, their default is at 20 seconds. The default, you can take it up to 60. Their own documents say the 20-second period is there so you don't miss your price. So that's how they explain it to the users. Now, I'd like to quickly address doctrine of equivalence as well. If for some reason someone was to import improperly, in our view, a user switch requirement into the patent, the DOE would still apply and there's no vitiation. The lower court, again, mistakenly focused on irrelevant facts from the Eastby case to short-circuit a function-way resolve analysis. The key is, in Eastby, the non-infringing dual-dynamic product vitiated because it never gave a guarantee. It never gave the benefit of the invention ever. You were always at risk. Here, their product in the fixed-time period gives the guarantee. That's undisputed. Now, in the court, the lower court focused on, well, you may not get the guarantee at the moment of the time-based recentering, but ignored that during the fixed periods, 15 minutes or greater, you're guaranteed. So there's no vitiation here applying the logic from the Eastby case. And the one other thing I'd like to point out is that the lower court's logic and Apelli's logic, their approach from a common-sense standpoint on the literal, is eviscerating static. It's taking away from what this court's narrow construction left TT. It left TT that the only way you can infringe is if you provide a mode in which there's a guarantee that you won't miss your price. Pretty narrow. Apelli's now wanting to say, well, even if you do that, even if you design the software, whether it's for 15 minutes or 60 years, to give you that guarantee and lock the prices, it's still not literally static because we have this defined recentering event way off into the future. That makes no sense. We will save it for you, Mr. Borsand. Mr. Levine? Levine or Levine? It's Levine, but I've heard it both ways. I'll respond to either. Or Levine, even. May it please the court, as Judge Bryson noted, the language in the F95F third case, the appellate court decision by this court in 2010, is pretty broad. And it's repeated. This court said the static limitation forbids all automatic recentering, that it requires permanency. The price access never changes without manual recentering. And that's true even if it moves automatically, even in rare instances. And it goes on and on. And there are a couple key points about that decision. Number one, the word mode, because the focus of T.T.'s argument, the appellant's argument, is, well, there's a static mode and an automatic mode. The word mode, I searched for it, never appears once in the Federal Circuit's 2010 decision where it interpreted the claims. That's something that's come up in terms of this argument. But in the context of this argument, what does mode mean? Is it a time period or a setting? Well, it's something that T.T. has come up with. They're trying to say that you have a static mode and an automatic mode. But in the product at issue in eSpeed, it actually did. There it wasn't time-based. There it was. You have a setting where you can turn the automatic recentering off, and then it was a static mode. Or you can turn it on. Here, it's always on. Automatic recentering is always on. But the other point that's really important is it's not like there was the eSpeed case, where you had claim construction in eSpeed and then looked at summary judgment in eSpeed, and then it came up here in 2010. There was consolidation of claim construction in all three trial issues before Judge Moran. So the claim construction that this court considered in 2010 was claim construction that Judge Moran arrived at that was not only in the eSpeed case but our case as well. And you can see that on the very first page of Judge Moran's opinion, which is A757. On the second page, A758, not only do you have all the case numbers there, Judge Moran explains this is a consolidated Markman hearing for all the cases. And that's important for a few reasons. One is we all got to raise, all the defendants got to raise their arguments about what the claims mean. And T.T. got to respond to those arguments. And what products are at issue doesn't affect what the claims mean. The claims should be the same regardless of what products are being accused. And eSpeed raised the issue. Well, what happens in recentering, two seconds versus five seconds? And Judge Moran considered that and basically said, no, this came up in the initial opinion and in the reconsideration opinion. And Judge Moran said, no, it's got to be never, permanent, a permanent situation where it's static only, never have automatic recentering, which is the very language that this court cited at page 1353 when it noted Judge Moran's construction and said, we agree with it. That construction is binding here. That's the construction of this court in 2010 based on the construction of Judge Moran in all these cases, including this one. And it's interesting because in the district court claim construction, T.T. argued, well, if it re-centers, automatically re-centers every five seconds, in other words, time-based recentering, that if that happens, then what you're going to have is periods of 4.99 seconds where it's static, kind of like their Moat argument. And what the court did is it rejected that argument. It said, no, for it to be static, it must never automatically re-center. It must always be manual or always be the same unless there's manual re-centering. All right. That was an argument made to this court? It was an argument made to Judge Moran. To Judge Moran. When T.T. took up, when T.T. then, based on the claim construction, then there was some re-judgment. Do you know whether that argument was made, again, to this court? It wasn't made explicitly to this court. There was some suggestion that under Judge Moran's construction to qualify as a static condition, T.T. said the price levels could never change positions automatically, but that's made more generally. The specific argument wasn't. Of course, T.T. could have raised it. I mean, that was up to them. They were appealing the claim construction, which then was applied by Judge Moran on summary judgment. But they had different accused products. Sure, different accused products. So that argument may not have been pertinent in that case. Well, it may not have been, but the claim construction should be the same regardless of what products are accused. And given Judge Moran's broad language, which this court adopted, never have any automatic re-centering. He didn't talk about never be at risk for automatic re-centering, and this court didn't either. This court didn't say never be at risk. It didn't say you always have to have a situation where there's no risk. It said never, permanence. Now, let me give you an example that shows the problem, I think, with T.T.'s, the way in which they're carving up the time periods. Let's say that the automatic re-centering was every 10 milliseconds. That's pretty quick, right? And let's say you have an instrument that's traded a lot such that the prices are changing. An example that people know generally is Apple, Apple stock. There's a lot of trading out there. If you, under T.T.'s logic, between milliseconds 1 and 9, you're in a static mode because you're not going to have re-centering during that little time period. Of course, to a user, if it's changing every 10 milliseconds, it's like a whirlwind. I mean, you can even visually see it because it's changing so quickly. Of course, they're dealing, they will answer, I'm sure, with real world products that have a minimum of 15 minutes, which somebody surely can appreciate when, A, you can do all sorts of business in 14 and a half minutes, and, B, you know when the 15th minute is approaching. So let me address that. The 15 minutes is one of the defaults. There are two different products here. They have different default time settings. What's the shortest? The shortest is 10 seconds. 10 seconds? Yes. It was 10 seconds, 20 seconds, I think it's 60, no, 10 seconds, 20 seconds, 60 seconds, no, 10, 20, 120, and 900 seconds. 900 seconds is 15 minutes. But the settings adjustable is noted, and, of course, the focus is on the maximum setting. But there's a minimum setting, too, which is one second. So if we're talking about real world, what you have here, you could have a change every one second. Now, the argument would be, well, between zero and .99 seconds, it's static. But, of course, to a user, that's changing a lot. So when we're talking about risk of someone getting the wrong order, that's something that certainly could happen one second. In fact, there's testimony here by a customer that you had him missing the right price, missing the order when you had it according to a default in auto recentering. Because right when you're clicking to say, I want to get the order, that happens to be the time when the auto recentering is happening. And that was the Earhart testimony. To be clear, what is the shortest settable time in any of the accused products? One second. One second. Yes. So there is testimony about how you can get the wrong order. And the reason is because the user said, this is Mr. Earhart at A, 14,079 to 83. He said he didn't keep a stopwatch. Even if it's, let's take the 60 second default. That's one of the defaults there. He doesn't have a stopwatch saying, boy, it's going to be 60 seconds. We're coming up to it. I better not place an order here. I better be careful. It just happens. That's something that, you know, there's actual testimony on that, unlike some of the hypotheticals that the other side is raising. So what you have here is a situation where you could have the unexpected happening, that you could have. Even if there's a time period that you've set, you don't know exactly when that's coming. This is important. There are some later products, ones that aren't at issue in this appeal, because they've been settled by the parties, involving 10 point, it's version 10.11, 1.1.7 of the quick trade module. And there they have a countdown clock. I think it's when you're in the last 10 seconds. There's a countdown showing you're about to recenter. You don't have that in the products at issue in this appeal. Products at issue in this appeal, there's no countdown clock. So that auto recentering can happen just at that time when you're about to place the order. You click, you get the wrong price. In fact, that's what happened to Mr. Earhart. I want to briefly talk about the 68-year notion. Three points there. One is that, as noted, the defaults are between 10 and 120 seconds, which is how products ordinarily use. Then there are ways to change the settings to make it more. You could change the settings to make it depends on the product. Again, it varies, 900 seconds, 9,999 seconds. The most you could get, you go out eight digits. But the testimony from their expert, Mr. Klausner, at A9661, as well as our guy who did it, Mr. Gaudier, at A976970, is the eight digits didn't work. They had eight digits there for the number of nines you could put in. It didn't work. So it came down to a number of days as opposed to years. But the thing is, so they said, well, you can change it using the quicktr.ini file and get into the changes in the programmable files. Well, that's changing the product. Judge Bryson wrote the decision in HITECH in 1995 where it said that a device doesn't infringe simply because it's possible to alter it in a way that would satisfy all the limitations of a patent claim. And here the key limitation is that you have a static price limit and that someone could come in and change things around to make it really long isn't something that's relevant to the infringement here. Number two, this is just speculation about what someone could do. There's no evidence anyone actually went into the files and changed it. What you have here is just speculation. And this court held in a decision where I think, if I wrote it down right, Judge Bryson was on the panel in this decision, the Dynacor Holdings case in 2004. Theoretical possibilities of infringement aren't enough. It's not enough. Well, someone might be able to go in and change the settings and do it. There's no evidence. They could have presented that evidence. This is in response to a summary judgment motion. They didn't. But finally, even if it were 68 years, the court drew the line. Because how else do you draw the line? I went through my 10 milliseconds example, how that's difficult. Even if it's one second, it seems it's absurd to suggest that you could know what's going on. They have a static period for less than a second. So the court looked at that and said, you know what, we draw the line as never. We're never having automatic recentering. That's the only place you can draw the line. And why? Not only do you not get a debate about is it two seconds, is it five seconds, is it 12 days, you know, how do you figure that out? But you have the prosecution history that this court referred to in the 2010 opinion. This is at page 1354 of that opinion. The court said that in the prosecution history there was a vague and indefinite misrejection. The patentee responded. The values, quote, do not change unless the recentering command is received. Based on that, the court said that the claims were allowed based on the understanding the price column did not center itself automatically. So you already have this question about where to draw the lines already been made by this court, and they drew the line at never. In claim construction, it was decided in this case as well as the e-speed case, and that's what should control. Finally, let me, well, I have a little bit of time. I want to address two more points. Quickly on the doctrine of equivalence, there is this doctrine that's been noted by this court several times, including the Ogme text case that Judge Rayna was on, the specific exclusion doctrine. If you have the claim that specifically excludes something, you can't claim the thing that was specifically excluded under the doctrine of equivalence. And here you have static limitations. The court interpreted that saying you never, never have automatic recentering. The court said, quote, the claim forbids all automatic recentering. That's page 1356. And the relevant standard is, quote, not the frequency of automatic recentering, same page. So you already have the court saying no automatic recentering. So given that automatic recentering, all of it specifically excluded, that's not something that can be an equivalent. Finally, there have been hypotheticals raised by TT in its briefs about, well, someone might turn off the computer and try to reset it, et cetera. Those aren't features of the software. Those are ideas, hypotheticals about ways people might try to get around the automatic recentering of the software. That doesn't make the software itself infringing, not to mention the fact there's no evidence to support that people have actually done that. And similarly, this notion in one of the products about how if you move the mouse pointer, that it can cause the automatic recentering to reset. Even if it does cause that to reset, it doesn't mean that it doesn't turn it off. So you can still – someone – for them to show infringement, they'd have to show someone is moving it. If it's a 60-second delay, which is what Klausner uses as his example, that someone's moving it, not only that first 60 seconds, but the next 60 seconds and the one after that and the one after that, to delay it all the time. Because unless they're doing that, what you have is occasionally if someone doesn't move the mouse pointer – by the way, it's different than a click. It's mouse pointer movement. You can click still. But they don't move the mouse pointer. That one time, what comes in? Automatic recentering. Thank you. Thank you, counsel. Mr. Gorsan has a little rebuttal time. The notion that TT's artificially dividing up the product is not true. It's belied by Apelli's own documents, their user manuals and release notes, which were written by their employees before the lawyers got involved. If you look at A9546, the future path user manual, it describes time-based recentering, describes the fixed time periods and says, quote, in these time periods, quote, the auto center will not take place. This is in order to protect you, the user, when placing or modifying orders so that the prices will not shift and you accidentally click or drag an order onto a price which was not desired. On another page of that manual, A9543, they say, quote, the price list remains static while the window is active and you are placing orders. These are their own documents. There's no way summary judgment – we're talking about summary judgment here – in favor of the defendants, finding no material of issue of fact, taking all reasonable inferences in favor of TT, and taking this factual infringement question away from the jury is proper. In light of these documents alone, let alone all the other evidence we've talked about. Now, this idea that, well, TT didn't approve use, and these are hypothetical scenarios on some of these longer time periods, must be clear. Use was not at issue, and it's improper to argue that now. The motions for summary judgment from appellees were only on the issue, does the term static read on the product? A2233-34 and 2794-95 are their motions. You could look through the entire docket. There was no other motion, so there was no opportunity for TT to – we weren't invited to come in and try to prove issues of use. That may be an issue for another day related to damages or something else, but not the issue here. Also, Mr. Levine's right that in QuickTrade, the GL product, there was an 8-digit 99,999,000 seconds that could be set. He's right that there was a bug in the software, and instead of making that be 3 years, it was 24.7 days. Guess what? No one even knew about that bug because it didn't matter, because the minute you go out past the day, which people put in the 99,999, they even told people in their release notes, tell the users to set 99,999 because it won't happen. It doesn't matter. 3 years, 24 days, 5 days, doesn't matter. He's right about that bug, though. Also, I have to remind the Court, too, that some of the claims here are CRM claims, and so proof of use doesn't even matter. And then finally, I would invite the Court to look, and we've cited this in our briefs, that the RCG case from Judge Dow in another court in Illinois, 2002-009, Westlaw, 3055-381, where he looked at the exact same issue and got it right. There was a product that had modes, time periods, but the software automatically switching you out of the modes, and he said summary judgment of non-infringement was not proper. We submit that Judge Dow got it right and Judge Ellis here got it wrong. Thank you, counsel. We'll take the case under advisement.